# EXHIBIT B

# APPLICATION FOR

# SEARCH WARRANT

# 280 HARRISON

# UNITED STATES DISTRICT COURT

for the

District of Idaho

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

280 HARRISON AVENUE, TWIN FALLS, IDAHO

)
)
)  Case No. MS 18 - 10286 - S - R&B
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The premises at 280 HARRISON AVENUE, TWIN FALLS, IDAHO as further described on Attachment A

located in the _____ District of _____Idaho_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846 | Distribution of controlled substances and conspiracy to do the same |
| 18 U.S.C. § 922(g) and 924(c) | Unlawful Possession of Firearms |
|  | Unlawful Possession of Firearms in Furtherance of Drug Trafficking |

The application is based on these facts:
See Affidavit in Support of Application.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Janeece Gonzales, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12 / 08 / 2018

_____
*Judge's signature*

City and state: Boise, Idaho

Honorable Ronald E Bush, Chief U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

IN THE MATTER OF THE SEARCH OF
THE PREMISES LOCATED AT:
428 LOCUST STREET SOUTH;
304 VAN BUREN STREET; AND
280 HARRISON AVENUE, TWIN FALLS,
IDAHO 83301, AND A 2004 BLACK KIA
SORENTO, LICENSE PLATE 2TCF656.

Case No. _____

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Janeece Gonzales, being first duly sworn, hereby depose and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of
   Criminal Procedure for a warrant to search the locations described in Attachment A for
   evidence of crimes as described in Attachment B.

2. I am a Special Agent (SA) with the United States Department of Justice, Bureau of
   Alcohol, Tobacco, Firearms, and Explosives (ATF), currently assigned to the Seattle
   Field Division, Boise Field Office. I have been employed with ATF since December
   2016. I completed the Criminal Investigator Training Program, which is a twelve week
   course, and the ATF National Academy Special Agent Basic Training, which is a fifteen
   week course at the Federal Law Enforcement Training Center (FLETC). I received
   training in investigative techniques and enforcement of federal criminal laws. Through
   my training and experience at FLETC, I learned how to investigate violations of the Gun
   Control Act within Title 18 of the United States Code, the National Firearms Act within

18R408_000799

Title 26 of the United States Code, and the Controlled Substance Act within Title 21 of
the United States Code. Additionally, I have received specialized training from the ATF
Special Operations Division Undercover Branch in undercover operative techniques. I
have also assisted other federal law enforcement agencies in investigating crimes
involving firearms and narcotics, including the Federal Bureau of Investigation (FBI), the
Drug Enforcement Administration (DEA).

3.   Prior to my employment with ATF, I worked as a certified peace officer for the state of
Idaho for approximately ten years. During my service as a peace officer, I worked six
years as a patrol officer for the city of Jerome Police Department (JPD); three of which I
served as the department's K-9 Handler for controlled substance detection. Following my
service with JPD, I worked four years for the Idaho State Police (ISP); one and a half
years I served as a State Trooper assigned to the Drug Trafficking Interdiction Team and
two and a half years I served as a Narcotics Investigator. I completed over 3,000 Idaho
Peace Officer Standards Training (P.O.S.T) training hours. Throughout my career I have
received training on topics to include, undercover operative techniques, surveillance
techniques, interviewing, writing of reports and warrants, search warrant execution,
handling of evidence, affecting arrests, search procedures, confidential informant
handling, identification and preservation of electronic evidence, and testifying in court. I
have a Bachelor of Science Degree in Criminal Justice.

4.   I have personally participated in this investigation and I am familiar with this
investigation. The facts in this affidavit come from my personal knowledge and
information provided by other law enforcement officers, statements from confidential

2

18R408_000800

informants, controlled purchases of drugs, physical surveillance by investigators, telephone data to include location information, and intercepted wire and electronic communications pursuant to a court order. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.   Based upon the information described in this affidavit, I believe there is probable cause to believe that David Paul Roberts, Echo Marie Dalos; Steven Thompson, Kyle Pherigo, Alexander Rodriguez, and others, have distributed, possessed with the intent to distribute, and conspired to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; have used wire facilities to facilitate the same, in violation of 21 U.S.C. § 843(b); have laundered proceeds derived through the distribution of controlled substances, in violation of 18 U.S.C. §§ 1956 and 1957; and have possessed firearms, in violation of 18 U.S.C. §§ 922 and 924(c); or have aided and abetted the same.

## **LOCATIONS AND VEHICLES TO BE SEARCHED**

6.   The premises located at 428 Locust Street South in Twin Falls, Parcel RPT00107223670. (hereinafter referred to as "Roberts' residence" or "The Shops"). The legal description is "Twin Falls Acres inside a plot of land 150' x 200' south of Tax #578." The property has approximate three-foot white fence on the east end of the property with the letter "H" on it. The white fence has an opening in the middle to allow vehicles to enter. The property consists of multiple buildings including two single wide trailers on the south end of the property, a shop style building on the west, a single wide trailer on the northwest corner and a house on the north east corner. Investigators are seeking to search all buildings on

3

18R408_000801

the property except for the house on the northwest corner, which has a tan stucco front, green metal roof and brown siding. The other buildings, which investigators are seeking to search are further described as follows. The single wide trailer on the northwest side of the property, white in color with an off white trim. The front door faces the south and is baby blue in color. The shop style building is on the west end of the property and has three large garage door facing to the east. The two garage doors to the south have a strip of windows and are white in color. The third garage door to the north is solid white. There are two single wide trailers on the south side of the property. The first is on the south west side and is white in color with grey trim. There are two doors facing to the north that have two windows between the doors. The second single wide trailer is on the south east side of the property and is white in color with grey trim. There are two doors that both face to the north with two windows in-between the door. This property is owned by David Roberts and used as his primary residence. Property records show that Roberts purchased the property on September 4, 2018, but investigators know that Roberts lived on the property prior to that date. Investigators have seen Roberts at the residence on numerous occasions while conducting surveillance as part of this investigation. Investigators have intercepted communications of Roberts where he acknowledged he lives at this location and gave others the address of this location.

7.    The premises located at 304 Van Buren Street in Twin Falls, Idaho (hereinafter referred to as "Dalos' residence"). The premises is a single-family dwelling situated on the northeast corner of Van Buren Street and Heyburn Street, in Twin Falls, Idaho. The residence is grey in color with reddish colored asphalt shingles and window trim. It is bordered on the south by a gravel or dirt parking area and on the west by a 4-foot wooden

4

fence. Within the fence line, at the northwest corner of the property, is a mailbox with faded "304" numbering. Also on the west side of the residence is the main entrance to the structure and a dog door. There is an alleyway to the east, that is inaccessible to the property. This location is the residence of coconspirator Echo Dalos who is the girlfriend of David Roberts. Investigators have seen Roberts and Dalos at the residence on numerous occasions while conducting surveillance. Roberts frequently visits this location and sometimes stays overnight at this residence. Investigators have intercepted numerous communications of Roberts where he acknowledged that he was at this residence.

8.      The premises located at 280 Harrison Avenue ("Thompson's residence) is a single-family dwelling located on the east side of Harrison Avenue. The front door of the residence has a black metal screen door and faces to the west. There is a large window on the north side of the front door that is covered by a metal awning. There is a ramp leading to the front door. The residence is painted white, with the upper portion of the house painted light yellow. The driveway is on the south side of the property, and leads to an attached carport. The numbers "280" are posted on the front of the residence. Steven Thompson and Kyle Pherigo reside at the residence. Investigators have seen Thompson at the residence while conducting surveillance.

9.      David Roberts drives a 2004 black Kia Sorento sports utility vehicle, bearing Idaho license plate 2TCF656. The vehicle is registered to David Roberts.

## **PROBABLE CAUSE**

5

18R408_000803

10.     As detailed below, investigators have received information from cooperating
        coconspirators that Roberts and others are working together to distribute
        methamphetamine and heroin in the Twin Falls, Idaho area. Roberts obtains the drugs
        from California or Nevada and then distributes the drugs to others after he arrives back in
        Twin Falls, Idaho. Investigators have corroborated this information in numerous ways.
        Investigators obtained location information for Roberts telephone that confirms that he
        routinely travels to California and Nevada. An analysis of telephone records confirms
        that Roberts communicates with the other coconspirators described by cooperators.
        Investigators have utilized confidential informants to purchase methamphetamine and
        heroin from Roberts and Dalos. Investigators have intercepted wire and electronic
        communications related to these criminal violations. As set forth in more detail below,
        there is probable cause that evidence of these crimes will be found at the above-described
        locations.

                    a.  **Information Provided By Cooperator**

11.     In April of 2018, Idaho State Police investigators received information from a person
        ("Cooperator") with knowledge about Roberts drug trafficking activity in the Twin Falls
        area. The Cooperator, whose identity is known to investigators, provided information in
        hopes of receiving leniency on pending felony drug charges. The Cooperator was
        charged with trafficking methamphetamine based upon the distribution of approximately
        one ounce of methamphetamine to a confidential informant on March 19, 2018. That
        charge is still pending. The Cooperator is an admitted user of drugs and has personal
        knowledge of Roberts and his drug organization because of the Cooperators drug use.
        The Cooperator is no longer cooperating with investigators and continued to use and

                                            6

18R408_000804

distribute drugs after providing information to investigators. The Cooperator is also
believed to have illegally possessed firearms after cooperating with investigators. The
Cooperators' criminal history includes felony arrests and convictions for controlled
substance violations and theft. The information provided by the Cooperator about the
drug organization was corroborated by other sources of information and telephone
records. The affiant believes the information provided by the Cooperator was reliable
and accurate.

12. The Cooperator stated that Roberts and others were distributing large amounts of
methamphetamine and heroin. The Cooperator stated that she accompanied her
boyfriend and Roberts to the Las Vegas and Los Angeles areas. The Cooperator stated
that Roberts usually utilized a rental vehicle for these trips to obtain drugs. The
Cooperator stated that Roberts obtained multiple pounds of methamphetamine that were
transported back to the Twin Falls area and distributed to others, who in turn sold the
drugs for Roberts. Investigators identified two telephone numbers utilized by the
Cooperator and confirmed through telephone records that the Cooperator had extensive
contact with Roberts' telephone.

### b. **Information Provided By Cooperator #2**

13. On August 28, 2018, a person ("Cooperator #2") was arrested, pursuant to an arrest
warrant, for violating terms of his federal supervised release. Cooperator #2 has an
extensive criminal history including a prior conviction for unlawfully possessing a
firearm in violation of federal law. Because of that conviction, he served a prison term
and was then placed on supervised release. While on supervised release, Cooperator #2

7

distributed methamphetamine to a confidential informant. At the time of his arrest on August 28, 2018, the United States Probation Officer supervising Cooperator #2 requested the assistance of Idaho State Police and ATF to search Cooperator #2's vehicle and residence. During the search, investigators located approximately six ounces of methamphetamine, a digital scale, and a .22 pistol. After his arrest, investigators provided Cooperator #2 with his *Miranda* warnings. Cooperator #2 told investigators that the six ounces of methamphetamine was the amount he had remaining from a one-pound delivery that he received from Roberts approximately one week earlier. Cooperator #2 told investigators that he intended to deliver the pistol to Roberts because Roberts trades drugs in exchange for firearms. Cooperator #2 stated that the seized .22 pistol was altered to accept a sound suppressor because that is what Roberts had requested. Cooperator #2 stated that within the prior 12–14 months, he had received significant quantities of methamphetamine from Roberts.

14. Cooperator #2 has an extensive criminal history including robbery, battery, assault, theft, unlawful restraint, burglary, eluding police, and various drug and traffic violations. Cooperator #2 provided information to investigators in hopes of receiving some consideration on his supervised release violation and anticipated charges related to the methamphetamine and firearm found in his possession.

### c. Trash Searches of Roberts' and Dalos' residences

15. On June 18, 2018, investigators conducted a trash search of Roberts' residence. During the search, investigators found items with Roberts' name, drug paraphernalia, and a white

8

18R408_000806

crystal-like substance, which was later confirmed by the ISP laboratory to be
methamphetamine.

16. On July 12, 2018, investigators conducted a trash search of Dalos' residence. During the
search, investigators found items with Dalos' name, a Las Vegas casino receipt dated
June of 2018, and suspected marijuana that field-tested presumptively positive for
marijuana.

17. On July 31, 2018, investigators conducted a trash search of Roberts' residence. During
the search, investigators found a white crystal-like substance, which field-tested
presumptively positive for methamphetamine.

### d. **Controlled Buy From Roberts**

18. On August 29, 2018, investigators executed a search warrant at a residence in Twin Falls,
Idaho. During the search, investigators located evidence that the person residing at the
location possessed methamphetamine and heroin. After being advised of the *Miranda*
warnings, the person cooperated with investigators and provided information about
Roberts' drug organization. The person ("CI 1189") had personal knowledge of Roberts
because he was CI 1189's heroin supplier. CI 1189 said that Roberts was a major
distributor of methamphetamine and heroin. The information provided by CI 1189
proved accurate and reliable.

19. On the same day, August 29, 2018, CI 1189 placed a consensually recorded phone call to
Roberts' telephone number (208) 320-3945. During the phone conversation with
Roberts, CI 1189 asked, "I was wondering if you had any of those brownies?" CI 1189
told investigators that "brownies" was coded language used to request heroin. Roberts

9

18R408_000807

told CI 1189 to come over to his residence. Investigators searched CI 1189's person and vehicle to ensure CI 1189 did not possess any controlled substances or other contraband. Investigators provided CI 1189 with a recording device and transmitter. CI 1189 met with Roberts at his residence. Investigators conducted surveillance during the transaction and monitored CI 1189's contact with Roberts using the transmitter. CI 1189 purchased approximately 3.3 grams (gross weight) of heroin from Roberts. After the transaction, investigators met with CI 1189 and collected the heroin and recording device. The substance field tested presumptive positive for heroin and was sent to the ISP laboratory. During the deal, an individual investigators identified as Jimmy Thorpe entered Roberts' residence with a rifle in hand. Over the transmitter, investigators heard the conversation between Thorpe and Roberts that Roberts wanted the rifle converted to accept a sound suppressor.

20. After the transaction, CI 1189 told investigators that CI 1189 took a "couple of hits" of heroin that Roberts' provided because CI 1189 was worried that Roberts would be suspicious if CI 1189 did not participate in drug use. CI 1189 cooperated with investigators with the hope of receiving leniency on the potential felony controlled substance violations based upon the items found during the search of CI 1189's residence as described above. CI 1189 has minimal criminal history consisting of some misdemeanor arrests. However, CI 1189 ceased cooperating and investigators believe that CI 1189 advised Roberts and others of CI 1189's status as an informant. Phone records show that CI 1189 continued to contact Roberts on his telephone.

### e. **Controlled Buy From Dalos**

18R408_000808

21.   On October 2, 2018, confidential informant 1198 (CI 1198) purchased 7.4 grams (net weight) of methamphetamine from Dalos. CI 1198 has a minor criminal history, which consists of only convictions for driving under the influence. CI 1198 cooperated with investigators with the hopes of receiving leniency on a pending felony controlled substance violation. CI 1198 has a close relationship with Roberts and Dalos and has previously purchased methamphetamine from each of them. The information provided by CI 1198 has proven accurate and reliable. The affiant is not aware of any information that suggests CI 1198 is not reliable.

22.   On October 2, 2018, investigators searched the person and vehicle of CI 1198 and provided CI 1198 with a recording device. Investigators conducted surveillance during the events. CI 1198 drove to Dalos' residence. CI 1198 arrived and parked in front of the residence. While CI 1198 was still seated in his/her vehicle, Dalos exited her residence and approached the passenger side window. Dalos reached into the open window and tossed a clear plastic baggie, which contained the methamphetamine, on the front passenger seat. Dalos had a brief conversation with CI 1198 before he/she left the residence. Investigators saw Roberts exit Dalos' residence just minutes after CI 1198 departed, which meant that Roberts was present inside Dalos' residence during the transaction. After CI 1198 left the residence, investigators met with CI 1198 and received the methamphetamine and recording device. The methamphetamine field tested positive for methamphetamine and was sent to the laboratory for confirmation. Investigators who conducted surveillance during the transaction saw Dalos approach CI 1198's vehicle consistent with CI 1198's statements of the event.

11

18R408_000809

23.     Other sources of information, including Cooperator #2, identified Dalos as a person who sells methamphetamine for Roberts. Cooperator #2 told investigators that he once saw Roberts with a significant amount of money in Dalos' residence and that it appeared that DALOS and ROBERTS were trying to hide the money when Cooperator #2 entered.

### f.  Roberts Trips to California and Las Vegas

24.     On August 24, 2018, United States Magistrate Judge Candy W. Dale signed a search warrant that authorized investigators to obtain historical location for Roberts' cell phone dating back to April 1, 2018. The search warrant also authorized investigators to obtain prospective location data of the cell phone. On October 9, 2018, Judge Dale signed a search warrant that authorized investigators to continue to obtain prospective location data of Roberts' cell phone. The information provided by Verizon Wireless does not give the exact GPS location of the cell phone but instead provides data about the cell towers used by the cell phone. The data provided shows that Roberts' telephone has traveled to Nevada over eleven times since April, 2018. Roberts' cell phone traveled to southern California on five of those trips.

25.     Investigators believe that Roberts utilizes others persons to assist in his trips to obtain drugs from California and Nevada. During Roberts' return trip on September 29, 2018, investigators located Roberts in Jackpot Nevada using the location data. Roberts was seen driving north on Highway 93 driving a gray 2018 Hyundai Accent with Utah license plate V735DM, which was confirmed as an Avis rental car. When Roberts stopped at a casino, investigators saw a 2003 silver Mitsubishi Galant, bearing Idaho license plate 2TZ7457, stop with Roberts. Investigators identified the driver of the Galant as Kyle

12

18R408_000810

Pherigo. Both vehicles traveled through the parking lot and stopped south of the casino. After the vehicles parked next to each other, Roberts and Pherigo got out of the vehicles, talked with one another, and walked into the casino together. Later, Roberts and Pherigo left the casino together and drove northbound towards Twin Falls, Idaho. Investigators saw the vehicles traveling in tandem together until investigators lost sight of the vehicles. Investigators later saw the rental vehicle parked at Dalos' residence. Pherigo's vehicle was parked less than a block from Dalos' residence at 280 Harrison Street, Twin Falls, Idaho. Kyle Pherigo has a criminal history including a conviction for felony burglary. He is currently on parole, supervised by Idaho Department of Corrections.

26. Based on my training and experience, I know that drug traffickers sometimes travel with more than one vehicle during times when they transport large amounts of controlled substances so that one vehicle may transport the drugs and the other vehicle may follow and act as a buffer to law enforcement or assist as necessary.

### g. Intercepted Wire and Electronic Communications and Further Investigation

27. On November 16, 2018, United States District Chief Court Judge B. Lynn Winmill entered an order authorizing the interception of wire and electronic communications of Roberts' cell phone number (208) 320-3945. This is the same cell phone number that Roberts has utilized throughout this investigation. Interceptions began on November 16, 2018, at approximately 1:40 p.m and continue as of the date of this affidavit. Monitoring agents have intercepted numerous communications relating to the distribution of, possession with intent to distribute, and conspiracy to distribute controlled substances and

13

18R408_000811

federal firearms offenses. Some of the pertinent intercepted communications are summarized below. The summaries are based upon line sheets and not final transcripts.

28. On November 19, 2018, Roberts received a telephone call, session 0413, from a person believed to be Marisa Alaniz using telephone number 208-404-4115. During the telephone conversation, Alaniz stated she would get a ride over to Roberts' residence so that she could get "half a piece." Based on my experience with drug investigations, I know that drug traffickers commonly use the term "piece" to refer to an ounce of heroin. I believe that this message pertains to the distribution of illegal narcotics.

29. Roberts has communicated extensively with his girlfriend Echo Dalos using telephone number 208-544-1336. Investigators know Dalos uses this telephone number because when communicating with this number, Roberts called Dalos by her full name. On November 19, 2018, Roberts received a telephone call, session 0415, from Dalos. During this telephone conversation, they discussed methods of defeating drug tests. Roberts told Dalos that she could take some money from underneath the bed. Based on my experience with this investigation, I know that Cooperator #2 previously saw a large amount of cash in Roberts' possession at Dalos' residence. I believe that Roberts keeps some of his drug proceeds at Dalos' residence. During a phone call on November 20, 2018, session 0530, Roberts told another person that he had $8,000 in the bank account and he does not like to keep a lot of money in the account. Based on my training and experience, I know that drug traffickers often keep bulk cash and are hesitant to deposit large amounts of drug proceeds into a bank account because it is difficult to launder drug proceeds without detection. It is common for drug traffickers to maintain places to safely store their drug proceeds to avoid having their drug proceeds stolen.

14

18R408_000812

30. On November 19, 2018, Roberts had a telephone conversation with Dalos, session 0416. During the call, Dalos asked to buy a half-ounce from Roberts. He told Dalos to be careful with what she says over the telephone. Dalos stated she needed one for Fred and she would pay for it. Roberts told her he would get her one and he would make it right now. They discussed having Fred come to Roberts' residence. Dalos apologized for saying stuff over the telephone. Based on my experience and knowledge of this drug investigation, I know that when Dalos asked to buy a half-ounce and later stated she needed "one," she was requesting a quantity of methamphetamine from Roberts. This is corroborated by Roberts scolding Dalos for discussing drug transactions in such plain terms without coded language. When Roberts stated he would get her one, he was saying he would measure out one ounce from a larger quantity and have it ready for Fred to pick up from Roberts' residence.

31. Roberts frequently communicates with Steven Thompson who uses telephone number 208-297-9870. Investigators initially believed the user of this telephone was Kyle Pherigo who lives with Thompson at 280 Harrison Street but investigators later confirmed the user of the telephone as Thompson through visual surveillance while he was speaking to Roberts. Since investigators began to intercept the communications, Thompson frequently communicates to Roberts that he has "paper" for him. For example, on November 18, 2018, Roberts received a text message, session 0298, from Steven Thompson, using telephone number 208-297-9870. The message stated, "Got paper for u." On November 28, 2018, session 1614, Thompson texted Roberts, "When u get back come by and get This paper." Based on my experience with this investigation, I

15

18R408_000813

believe that when Thompson states he has paper, he has collected money that he owes to Roberts for drug transactions.

32.    Thompson also frequently communicates with Roberts about law enforcement surveillance. Monitoring agents have intercepted numerous communications where Thompson warned Roberts about police. For example, during a telephone call on November 18, 2018, session 0306, Thompson told Roberts that as he left Roberts' residence, an unmarked vehicle followed him. On November 21, 2018, Thompson texted Roberts, in sessions 0756, "I see a grip of pigs on corner where u at." In another series of text messages on November 28, 2018, Thompson communicated with Roberts about vehicles in the area and texted, "Feds. For Sure." Based on my experience with drug investigations, I know that drug traffickers are commonly on the lookout for police surveillance and communicate with coconspirators about potential police surveillance to avoid detection.

33.    On November 29, 2018, Roberts exchanged a series of communications with several people about firearms. A male told Roberts about another person who had some guns Roberts could get cheaply. During a phone call, Roberts asked about the guy who brought over the "pistolas." When Roberts eventually spoke to a person referred to as "JR," Roberts stated he was interested in some things that JR had. JR agreed to come see Roberts. Roberts asked JR to come to his residence. Investigators identified JR as Joseph Russel Oakes, who was prohibited from possessing firearms because of a prior felony conviction. Investigators conducted a traffic stop and seized multiple firearms in Oakes's possession as he was driving to Roberts' residence in Twin Falls. Roberts also has prior felony convictions and is prohibited from possessing firearms. Roberts was convicted of

16

aiding and abetting burglary on January 29, 2003, and burglary and aggravated assault on June 6, 2003.

34.   On November 24, 2018, CI 1198 conducted a controlled purchase of 3.6 grams (net weight) of methamphetamine from Roberts in exchange for $120. Prior to the transaction, investigators searched CI 1198's person and vehicle to ensure there were no controlled substances or other contraband. Investigators provided CI 1198 with a recording device and transmitter. CI 1198 purchased the methamphetamine from Roberts at Roberts' residence. After the transaction, investigators recovered the methamphetamine and recording device. The substance field-tested presumptively positive for methamphetamine and was sent to the laboratory for further testing.

35.   On November 24, 2018, agents intercepted communications between Roberts and a male later identified as Robert Parsons. During the call, Roberts confirmed he was at his Dalos' residence. Parsons requested to know when Roberts would be at his residence and Roberts asked for what. Parsons replied, "Just a 20." Roberts directed Parsons to come by Dalos' residence. A short while later, investigators saw a white Jeep arrive outside Dalos' residence. A male, believed to be Roberts, came out of Dalos' residence and met with Parsons in the Jeep. Their interaction lasted less than a couple of minutes. After the white Jeep drove away investigators conducted a traffic stop. Parsons consented to investigators searching the Jeep. Investigators found residual amounts of suspected methamphetamine crushed on the floorboard. Parsons first told investigators the methamphetamine came from a friend named Mikey, who got the methamphetamine from Roberts. Parsons later stated that prior to the traffic stop, he met Roberts at Dalos' residence where he smoked methamphetamine with Roberts in the Jeep.

17

36.    Roberts drives a 2004 black Kia Sorento sports utility vehicle, bearing Idaho license plate
       2TCF656. The vehicle is registered to him. Investigators conducting surveillance have
       seen Roberts drive the Kia on numerous occasions. In the past several days investigators
       have intercepted numerous communications that Roberts was collecting money.
       Investigators have intercepted wire and electronic communications that indicate that
       Roberts is currently traveling to California and will return in the immediate future. The
       phone location data confirms that Roberts is traveling towards California. Investigators
       conducting surveillance saw Roberts in Nevada in his Kia Sorento. Based upon my
       experience and knowledge of this investigation, I believe that Roberts collected money
       and is traveling to California to replenish his supply of controlled substances.

37.    Based on my training and experience, drug distributors commonly have in their
       possession (on their person, in their vehicles, at their residences and/or at their stash
       houses) firearms, including handguns, pistols, revolvers, rifles, shotguns, machine guns
       and other weapons, that are used to protect and secure the drug trafficker's property,
       including narcotics, drug paraphernalia, drug proceeds, and records.

38.    Based on my training and experience, it is common for drug traffickers to utilize cellular
       and/or "smart" phones to communicate with customers and suppliers, and to store the
       names and contact information for the same. It is also common for drug traffickers to
       retain a "Pay/Owe" or accounting sheet/ledger on their phones to keep track of the
       ordering, sale, and distribution of controlled substances, and how much money or drugs a
       customer or supplier is owed or owes. Furthermore, it is common for drug traffickers to
       use cellular or "smart" phones subscribed in a name other than their own, and to use
       prepaid phones for which no real subscriber information is available. In addition, drug

18

18R408_000816

traffickers usually take and store photographs and videos of themselves, their associates, their property, and their product on their phones. Evidence of all of the above may be stored on cellular and "smart" phones in the form of call logs, text messages, voice mail messages, calendars, notes, reminders, photos, videos, etc. (to include the use of third-party "apps" or applications). In addition, the same information, photos, and videos may be shared through cloud-based services and downloaded to and stored on computers (to include tablets, iPads, etc.) and other storage media (to include USB flash drives, SD cards, etc.).

39.    In this particular case, agents have intercepted numerous communications from Roberts, Dalos, Thompson, and others where they are using their cell phones to discuss drug transactions and drug proceeds. Information including call logs and text communications constitute evidence of these crimes.

## CONCLUSION

40.    Based upon the information presented in this affidavit and my law enforcement training and experience, there is probable cause to believe Roberts and others are committing the above-described violations, and that there is probable cause to search the locations described in Attachment A for evidence of such crimes as described in Attachment B.

## REQUEST FOR SEALING

41.    I respectfully request that this Court issue an order sealing for a period of sixty days, or until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is

19

18R408_000817

necessary because the items and information to be seized are relevant to an ongoing

investigation into a criminal organization, and not all of the targets of this investigation

will be searched at this time. Based on my training and experience, I have learned that

criminals actively search the internet for criminal affidavits and search warrants, and

disseminate them to other criminals as they deem appropriate, i.e., post them publicly

online through forums. Premature disclosure of the contents of this affidavit and related

documents may have a significant and negative impact on the continuing investigation

and may severely jeopardize its effectiveness.

Respectfully submitted this $\underline{8}^{th}$ day of December, 2018.

Janeece Gonzales
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on December 8, 2018:

Honorable Ronald E. Bush
UNITED STATES CHIEF MAGISTRATE JUDGE

20

18R408_000818

## ATTACHMENT A

### LOCATION TO BE SEARCHED

The premises located at 280 Harrison Avenue ("Thompson's residence) is a single-family dwelling located on the east side of Harrison Avenue. The front door of the residence has a black metal screen door and faces to the west. There is a large window on the north side of the front door that is covered by a metal awning. There is a ramp leading to the front door. The residence is painted white, with the upper portion of the house painted light yellow. The driveway is on the south side of the property, and leads to an attached carport. The numbers "280" are posted on the front of the residence. Steven Thompson and Kyle Pherigo reside at the residence.

18R408_000819

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

1. Controlled substances, including methamphetamine, heroin, and others, held in violation of 21 U.S.C. §§ 841(a)(1) and 846.

2. Paraphernalia for using, packaging, processing, weighing, and distributing controlled substances, for example: scales, funnels, filters, balloons, chemicals, cutting agents, sifters, plastic bags, and heat-sealing devices.

3. Ledgers, police scanners, video cameras and monitors, books, records, receipts, notes, photographs, video tapes, CDs, DVDs, and other such items relating to the distribution of controlled substances (both in electronic or digital form as well as hard-copy form).

4. Personal books, pagers, electronic organizers, computers, discs, hard-drives, flash-drives, cellular telephones and papers reflecting names, addresses, telephone numbers, and other contact/identification data relating to the distribution of controlled substances.

5. Cash, currency, drug proceeds and records relating to income and expenditures of money and wealth relating to controlled substances, for example, money orders, wire transfer and cashier's check receipts, income tax documents, bank statements, passbooks, checkbooks, and check registers.

6. Items of personal property which tend to identify the ownership/occupancy of the residence that is the subject of this affidavit, including but not limited to canceled mail, deeds, leases, rental agreements, photographs, utility and telephone bills, statements, identification documents, and keys.

7. Firearms.

8. Ammunition.

18R408_000820