Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
Telephone: (208) 724-2617
Facsimile: (208) 906-8663
chd@fergusondurham.com
ISB No. 6428

Attorney for Steven Thompson

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>STEVEN TODD THOMPSON,<br>Defendant. | Case No. 1:18-CR-00401-002<br><br>**MEMORANDUM IN SUPPORT OF EXPEDITED MOTION TO REVOKE DETENTION ORDER** |

**INTRODUCTION**

Steven Thompson moves the Court for an order finding exceptional reasons to revoke its prior order of detention and release him to his home immediately, on conditions, pending his sentencing hearing. Should the Court desire a hearing on this

1

motion, he consents to an appearance by phone or video conferencing. *See* D. Idaho. Gen. Order 364, Filings Pursuant the Bail Reform Act, ¶ 4.

Thompson was arrested on December 10, 2018. He waived a detention hearing and has now been in custody for 16 months. (Dkt. 23.) He has pled guilty to one count of conspiracy to distribute methamphetamine. (Dkt. 280.) The Court set May 12 as the sentencing date, but that date is in jeopardy. *See* D. Idaho. Gen. Order 263.

This motion is based on the unprecedented threat that Covid-19 poses to vulnerable persons, which include Thompson. He checks several boxes: he is incarcerated, over the age of 50, and has hypertension. He also suffers from mental health conditions. The high risk of sickness or death, by itself, is an exceptional reason warranting a release from detention. But here there is more than that. Thompson's mother is suffering from Alzheimer's Disease, and he was her full-time caretaker before his arrest. Because of the Governor's recent stay-at-home order, she has moved in with Thompson's sister. The family needs him home to take care of her again.

Finally, given the sentencing judge's noted policy disagreement with sentencing disparities for drug purity versus a mixture or substance, Thompson anticipates that the Court will consider the low end of his guidelines range to be 30 months. Armed with significant mitigating factors - including but not limited to the current pandemic - Thompson will have a strong argument for a sentence of time served, home detention, or a similar disposition rather than incarceration in a BOP prison.

## LEGAL STANDARD

A defendant who has pled guilty to a drug crime that has a maximum sentence of more than ten years, like here, generally must be detained pending sentencing. 18 U.S.C. § 3143(b)(2). There is an escape hatch, however: such a defendant can still be released is he or she can clearly show that there are "exceptional reasons" why their detention would not be appropriate. *E.g. United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003) (citing 18 U.S.C. § 3145(c)).

## DISCUSSION

These are extraordinary times. Courts across the country recognize that the global health crisis posed by Covid-19 requires informed, speedy, and preemptive action to reduce the risk of infection, illness, and death to prisoners and prison officials alike. *See, e.g., Xochihua-Jaimes v. Barr*, No. 18-71460, ECF No. 53 (9th Cir. Mar. 23, 2020) (sua sponte ordering release of non-citizen from immigration detention center "[i]n light of the rapidly escalating public health crisis, which public health authorities predict will especially impact immigration detention centers.")

Thompson can show that circumstances have changed materially since the Court ordered him to be detained. Exceptional reasons now warrant his release on conditions.

### A. The pandemic poses a grave threat to incarcerated populations.

The Court is familiar with the emergency caused by the spreading pandemic. Coronavirus is an easily transmissible and deadly virus. It has spread from a local

infection in China to over 1.2 million cases worldwide in fewer than five months. *See* https://www.worldometers.info/coronavirus/ (last visited April 5, 2020). As of the writing of this motion, there have been nearly 10,000 deaths in the United States. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited April 5, 2020).

Governor Little has ordered all persons to stay at home, yet the rate of infection continues to rise in Idaho. This Court has also issued a series of general orders, each with increasing restrictions on access to the courts by the public and litigants.

The risk to the general population is real. But it is even more acute in a prison or jail. Public health officials uniformly say that social distancing – the practice of staying six feet apart and avoiding unnecessary contact with others – is required to slow the virus. Inmates share close quarters with poor ventilation, use communal bathrooms and showers, and cannot practice social distancing. They are generally less healthy and poorer than the general population. (Exhibit A, ¶ 16, Dec. of Dr. Charles Beyrer.) Prisons and jails "have long been known to be associated with high transmission probabilities for infectious diseases." (*Id*. at ¶ 11.) Even in the best of times, inmate medical care lags far behind the quality of care for the non-incarcerated. Prisoners are not on an island; a virus that catches fire inside will surely spread outside.

The Court does not need to guess as to what might happen. It already has. On Riker's Island, a pretrial detention facility, at least 167 inmates and 137 corrections

officers tested positive as of March 31. *See* "Top doctor at Rikers Island calls the jail a 'public health disaster unfolding before our eyes," Washington Post, March 31, 2020, at https://www.washingtonpost.com/nation/2020/03/31/rikers-island-coronavirus-spread.

The infection has now begun to infiltrate the Bureau of Prisons, and it is growing. The BOP has responded with increasingly urgent orders. On April 3, Attorney General Barr released a memo to the Director of BOP to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates, starting with the hardest hit institutions. *See* DOJ Memorandum titled "Increasing Use of Home Confinement at Institutions Most Affected by Covid-19," April 3, 2020, at https://tinyurl.com/vestg7y.

### B. The Washington County Jail is not prepared.

Thompson is detained at the Washington County Jail. Counsel proffers that the Jail has done little to prepare for the pandemic. (Exhibit B, Dec. of Craig Durham, ¶ 7.) Corrections officers are not wearing protective gear. (*Id*.) Inmates are not wearing protective gear. (*Id*.) They have told Thompson there is nothing to worry about. (*Id*.) He has tried to cover his mouth and nose with his shirt but was ordered not to do so. (*Id*.) Washington County appears to be hopelessly lost in wishful thinking or, worse, is deliberately indifferent to the serious medical needs of its inmates.

Even if they wanted to be more proactive, jail officials don't have many tools. The best one is decreasing the inmate population rapidly. According to epidemiologist Dr. Chris Beyrer, "[r]eleasing as many inmates as possible is important to protect the

health of inmates, the health of correctional facility staff, the health of health care workers at jails and other detention facilities, and the health of the community as a whole." (Exhibit A, ¶ 19.)

### C. Thompson is at an even increased risk.

Thompson is especially vulnerable within an already vulnerable population. He is over the age of 50. (Dkt. 311, p. 2.) He reports the he was on medication for hypertension but that it is not currently being treated. (Exhibit B, ¶ 7.) (Dkt. 311, initial PSR, ¶ 121.) "The case fatality rate is higher in men, and varies significantly with advancing age, rising after age 50, and above 5% (1 in 20 cases) for those with pre-existing medical conditions including cardio-vascular disease, respiratory disease, diabetes, and immune compromise." (Exhibit A, ¶ 6.)

And while not necessarily a risk factor for the illness, it is also relevant that Thompson also has long struggled with mental health conditions, including anxiety, depression, schizoaffective disorder, and ADHD. (Dkt. 311, Exhibit C Dec. of Cindy Pherigo, ¶ 9.) He had been receiving social security disability for his mental health on the outside. These conditions have worsened in the face of this threat. (*Id*.)

### D. Thompson is needed at home to care for his ailing mother.

Thompson is needed as a caretaker for his mother, who has Alzheimer's. Before he was arrested, he would ensure that she had her medication, went to appointments, was fed, bathed, and generally well taken care of. (Exhibit B, Attachments 1-4; Exhibit

C, ) His sister, Cindy, has provided a declaration that attests to Thompson's devotion to his mother and skill as her caretaker. She writes that he is "irreplaceable," particularly now that they've been forced to move their mother into Cindy's home. (Exhibit C, ¶ 7.) That move has caused a hardship on the family. (*Id* at ¶ 6.) Cindy does not believe that Thompson would be a risk of flight, as he would not leave their mother unattended. (*Id*. at ¶ 7.) Others who have witnessed him take care of his mother corroborate this. (Attachments 1, 2, and 3 to Exhibit B.) The family needs his help in this crisis. (Exhibit C, ¶¶ 6-7.)

### E. Thompson has a strong argument for a downward variance and a sentence other than imprisonment in a BOP facility.

The initial PSR has been completed, and Thompson's advisory guidelines range is 70 to 87 months based on drug purity with a Criminal History Category V, Final Offense Level 21. (Dkt. 311, ¶ 133.) Neither party has objected to the range. Under this Court's policy of reviewing a wider range because of drug mixture or substance versus purity sentencing disparities, the expanded range would drop to a level 13, with 30 months as the low end.[1] USSG 5A.

Thompson will have a strong argument for a variance even beyond the Court's widened range. He anticipates requesting time served, home detention, or at most a

---

[1] The initial PSR erroneously listed the low range at a level 13 as 37 to 46 months. (Dkt. 311, ¶ 157.) Thompson believes this is a clerical error and has objected to that calculation. A category V, level 13 is instead 30 to 37 months. USSG 5A.

short in-custody or intermittent term. The basis for his argument will be similar to the one that he has made here for release, as follows.

He has already served 16 months, which will be credited against any future sentence. At a time when the BOP is *releasing* prisoners to home confinement at a quickening pace, it makes little sense to send one with a likely shorter term *into* an environment filled with disease vectors. He would still be at a higher risk in an already high-risk population.

Thompson's role in the offense is mitigated for several reasons. His mental health conditions lessen his culpability. Some of his conduct that the Government has cast in a sinister light, such as supposedly alerting David Roberts to police presence or using other "counter surveillance" measures, can equally be explained by compulsive behavior. Thompson sees the police behind every bush. That's how his mind works.

The plea agreement, and the initial PSR, contemplate holding him accountable for the less than an ounce of methamphetamine that was found in his home. (Dkt. 275, pp. 2, 6; Dkt. 311 at ¶ 50.) That is a borderline user quantity. There were no controlled buys from Thompson's home. In the plea agreement, the Government has stipulated that he was a minor participant. (Dkt. 275, p. 7.)

He also has a longstanding substance use disorder. His use and possession of methamphetamine was due to his addiction and as self-medication for an over-active mind rather than to profit. Stimulants ease symptoms of ADHD. He needs legitimate

treatment, not incarceration. And, as stated, his family needs him at home to help care for his mother.

A downward variance would also be in line with the co-defendants' sentences. The Court sentenced Echo Dalos to probation. (Dkt. 309.) She was the David Roberts' girlfriend and had significant involvement with him in moving drugs. Crystal Cox also received probation (Dkt. 323.) She helped Roberts' package and store the 12 pounds of meth that investigators found in his car when he was arrested. Amanda Smith received 24 months. (Dkt. 252.) Timothy Higdem, who was distributing, got 40 months. (Dkt. 232.) Colt Spencer, Roberts's right-hand-man who was accompanying him on the final drug run, has been permitted to remain at liberty pending sentencing. (Dkt. 303.)

Roberts is the exception at 300 months (Dkt. 307), but he was the major source of drug and gun trafficking in the Magic Valley area. Counsel proffers that Roberts has told investigators that Thompson was mainly a user who traded tools and things with Roberts for meth but who didn't have a role in his distribution network.

### F. It is unlikely sentencing will occur next month.

A final point that counsels in favor of release is the uncertainty of when sentencing will occur. It is set for May 12, but that date is in doubt. On March 30, Chief Judge Nye issued a General Order that, among other things, finds that change of plea and sentencing hearings cannot be held in person for at least 90 days and will be delayed, *unless* the Court finds that they cannot be delayed without serious harm to the

9

interests of justice *and* the defendant consents to a videoconference or telephonic hearing. D. Idaho. Gen. Order 363, ¶ 2.

In this fluid environment, it is unlikely that sentencing will take place on May 12. If Thompson were released, though, he would not object to continuing sentencing to a date that would ensure the safety of all parties.

* * *

The Court should revisit detention, find exceptional reasons, and release Steven Thompson immediately. His risk of flight is low. He has lived in Twin Falls nearly all his life. All his contacts are there. He would not leave his mother unattended. He has no history of violence. Thompson would agree to any conditions that the Court deems necessary to ensure the safety of the community, including home detention with electronic monitoring – with permission to leave only to get necessities and to attend all medical or legal appointments for himself or his mother.

Respectfully submitted on this 8th day of April 2020.

/s/*Craig H. Durham*
Craig H. Durham
Attorney for the Defendant