BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
CHRISTOPHER S. ATWOOD, IDAHO STATE BAR NO. 7013
ASSISTANT UNITED STATES ATTORNEY
ALEXIS R. KLEMPEL, IDAHO STATE BAR NO. 9449
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>STEVEN TODD THOMPSON,<br><br>　　　　　Defendant. | Case No. 1:18-cr-401-EJL-002<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR MOTION TO CONTINUE SENTENCING** |

　　　　The United States of America, by and through Bart M. Davis, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, submits the following response to Defendant's motion to strike and motion to continue sentencing. The Government did not violate the plea agreement. However, the Government does not object to Defendant's motion to strike certain exhibits. Out of an abundance of caution, the Government also asks the Court to strike certain portions of its Sentencing Memorandum as described below. The Government agrees Defendant should receive a minor role reduction and has not argued otherwise. Additionally, the Government does not object to a continuation of the sentencing.

//

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR
CONTINUE SENTENCING  - 1**

## BACKGROUND

Defendant pleaded guilty, pursuant to a plea agreement, to conspiring with David Roberts to distribute methamphetamine, as charged in count one of the Third Superseding Indictment. (ECF #275). The Third Superseding Indictment alleges the conspiracy occurred from approximately February 2017, until December 10, 2018. (ECF #194).

In the plea agreement, the parties agreed that the base offense level for the drug quantity, pursuant to U.S.S.G. § 2D1.1, was 26. ECF #275, at 6. However, there was no agreement as to whether the Defendant was a career offender. To the contrary, the plea agreement expressly provides, "this agreement is only as to the drug quantity and is not intended to address any specific offense characteristics, enhancements, or other guidelines that may apply. *Id*. Both parties knew the career offender enhancement could be at issue during sentencing. The parties also agreed the Defendant was a minor participant pursuant to U.S.S.G. § 3B1.2(B).

After Defendant entered his guilty plea, he minimized his conduct and suggested he should receive a sentence far below the advisory guideline range. On March 2, 2020, in a *pro se* filing, Defendant even suggested he was not guilty of the crime but instead was "a drug user – period." ECF #308.

In his objection to the initial PSR, he attempted to minimize his conduct. The PSR accurately stated that as Roberts returned to Idaho with 12 pounds of methamphetamine, Defendant "was going to function as the 'lead' car for interference between law enforcement and the load car." Initial PSR, ECF # 311, ¶ 40. Defendant objected to that characterization. ECF # 326, p. 2. Instead, he requested language that Defendant and Roberts drove in tandem in separate cars until they were stopped and arrested. Defendant acknowledged both parties would "argue its interpretation of those facts." *Id*.

The advisory guideline range in the initial PSR, which had not yet taken into account his status as a career offender and his obstruction of justice, was 70 to 87 months. ECF # 311, ¶ 133. Despite this range, Defendant filed a motion to be released from custody arguing that he "will have a strong argument for a sentence of time served, home detention, or a similar disposition." ECF # 328-1, p. 2, 7. He had served a mere 16 months at the time. *Id*. Even though he had pleaded guilty to conspiring with Roberts to distribute methamphetamine, he claimed the methamphetamine found in his home, which was used to establish the drug quantity for the offense, was "borderline user quantity" and suggested to the Court, based upon Roberts' statements, that Defendant was "mainly a user" who traded tools for meth but "didn't have a role in his distribution network." *Id*. p. 8–9.

Defendant notified the Government, through his counsel, that he intended to seek a downward variance at sentencing. Defendant then filed his sentencing seeking a "large downward variance." ECF #351, p. 2–3. He minimized his conduct by claiming he was simply "a low-level addict whose use got him into trouble again" *Id*. p. 2. He suggested that he was not driving the Galant in tandem with Roberts in September 2018, despite the records that show his phone did travel to Ely, Nevada to meet Roberts at approximately 3:30am. *Id*. at 9. He attempted to explain away all of the evidence showing his involvement in the conspiracy. *Id*. p. 16–17.  His sentencing memorandum contains a simple conclusory statement that he committed a crime and he claimed to accept responsibility for it (*Id*. at 17); yet nowhere in the memorandum does he acknowledge any conduct that constitutes that crime. The farthest he goes is to acknowledge he was "a user feeding his own habit and who, *at most*, *might* have given small quantities to friends." *Id*. at 17. However, this conduct would not constitute the crime to which he pleaded guilty – entering into an agreement with Roberts to distribute methamphetamine.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR CONTINUE SENTENCING  - 3**

With this backdrop, the Government filed its Sentencing Memorandum. ECF # 352. The Government countered many of Defendant's arguments where he had attempted to minimize his conduct. The Government did not attempt to "portray [Defendant's] role in the offense as an aggravated one" as he claimed. Rather, the evidence properly revealed Defendant's participation in the conspiracy as someone who acted as a look out, helped transport the drugs by functioning as a lead car, and someone who sold small amounts of drugs for Roberts. Indeed, much of the evidence was included because it provided the corroboration that Defendant strenuously argued was lacking. *See* Defendant's Sentencing Memorandum, ECF # 351, p. 16–17.

## APPLICABLE LAW

Plea agreements are contracts. *United States v. Heredia*, 768 F.3d 1220, 1230 (9th Cir. 2014). The party claiming breach of the plea agreement bears the burden of proving such a breach. *United States v. Webster*, 468 F.2d 769 (9th Cir. 1972).

"When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). The government may not break its promise either explicitly or implicitly. *Id*. While the government need not make the agreed-upon recommendation "enthusiastically," it may not "superficially abide by its promise" while also making statements that serve no practical purpose but to advocate for a different outcome than the one it agreed upon. *Id*. "The government breaches its bargain with the defendant if it purports to make the promised recommendation while 'winking' at the district court to impliedly request a different outcome." *Id*. (internal citations and quotations omitted).

In determining whether the Government breached its plea agreement, the Court should determine the terms of the agreement and then assess the conduct at issue to determine whether it violated the promise in the plea agreement. Here, the terms are fairly clear.

## ANALYSIS

A.   Drug Quantity

First, the parties agreed the base offense level for the drug quantity, pursuant to U.S.S.G. § 2D1.1, was 26. Plea Agreement, ECF #275, p. 6.  That provision provides:

> **Base Offense Level Based Upon Drug Quantity.**  The parties agree that the Defendant's base offense level pursuant to the drug quantity table under USSG § 2D1.1 is 26.  On December 10, 2018, investigators found methamphetamine in the Defendant's residence.  That methamphetamine was analyzed by the Idaho State Police (ISP) laboratory, which concluded the substance contained 21 grams of actual methamphetamine.  This agreement is only as to the drug quantity and is not intended to address any specific offense characteristics, enhancements, or other guidelines that may apply.

*Id*.  Notably, the parties agreed to the specific offense level, which corresponds to a range of methamphetamine. *See* USSG § 2D1.1. The parties did not specifically limit the amount of methamphetamine solely to the 21 grams found at Defendant's residence. Even if there were some additional methamphetamine attributed to Defendant, particularly if it were never seized or tested for purity, it would not necessarily raise the offense level.  However, the Government is not arguing that the Defendant should be responsible for anything beyond the 21 grams of actual methamphetamine, and certainly not any additional drug quantity that would result in an even higher offense level.

In his Motion to Strike, Defendant does not claim the Government breached the plea agreement by arguing for a higher drug quantity or corresponding offense level. However, Defendant takes issue with Government's Exhibit #1, which is a statement by Cooperator #5 that

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR CONTINUE SENTENCING  - 5**

implicates Defendant in transporting methamphetamine on prior occasions, receiving methamphetamine, and even distributing small quantities of methamphetamine. The Government only included this exhibit to show the nature of Defendant's conduct and to provide corroboration that Defendant was assisting Roberts distribute methamphetamine. The Government did not rely on it for unsubstantiated statements regarding additional drug quantity. The Government also conceded that drugs were not seized related to this historical information was it not supported by sufficient indicia of reliability and should not be included in the drug quantity calculation. ECF # 352, p. 6. However, to avoid any issues, the Government does not object if the Court strikes Exhibit #1 (ECF #352-1), and any reference to it in the Sentencing Memorandum. Similarly, the Government requests the Court strike Exhibit #2 of its Sentencing Memorandum (ECF # 352-2), and any reference to it in its Sentencing Memorandum.

    B.    <u>Minor Role</u>

Second, the parties agreed that "Defendant was a minor participant in the offense pursuant to U.S.S.G. § 3B1.2(b)." The minor role reduction applies where the defendant was substantially less culpable than the average participant. U.S.S.G. § 3B1.2, note 3(A). That includes someone whose participation was limited to transporting or storing drugs and who is accountable only for the quantity of drugs the defendant personally transported or stored. *Id*.

Here, the Government has not breached the plea agreement, either explicitly or implicitly. The Government has not argued Defendant was not a minor participant. The Government's Sentencing Memorandum outlines Defendant's conduct acting as a lookout and helping transport drugs by functioning as a lead car, and also someone who sold small amounts of drugs for Roberts. The Government acknowledged that the evidence was insufficient to show that any larger amount was within the scope of Defendant's agreement with Roberts or was reasonably

foreseeable to Defendant. ECF # 352, p. 6. The Government does not seek to hold Defendant responsible for the methamphetamine in Roberts' vehicle when Defendant and Roberts were arrested.

Defendant's complaint that the Government seeks to inflate his role to that of Roberts' is not accurate. For instance, Government's Exhibit #1 that Defendant complains of, specifically states that it was Cooperator #5 that was running the business while Roberts was incarcerated not Defendant. The Government readily acknowledges that Defendant's role was substantially less that Roberts, Roberts' unnamed source, Cooperator #5, Colt Spencer, and others. Simply because the Government contested Defendant's version that he did not assist Roberts by acting as a lookout or a lead car, does not mean the Government suggested Defendant's role was other than minor. However, to avoid any possible issues, the Government requests the Court strike Exhibit #1 and #2 and any reference to them in its Sentencing Memorandum. Further, the Government seeks to clarify that Exhibit #3 is relevant to Defendant's history and characteristics. It is relevant to his performance while on felony supervision. It is relevant to his argument for a downward variance that if released he will seek treatment and take care of his mother because it shows his conduct while he was taking care of his mother. Defendant argues that the Government used Exhibit #3, which shows police found digital scales, a measuring cup, and user quantities of drugs, to somehow suggest Thompson's "extensive role" in the conspiracy. That argument is not accurate. As Defendant points out, the fact that police did not find large quantities of drugs substantiates Defendant's minor role. The Government specifically requests the Court consider Exhibit #3 for nothing more than Defendant's history and characteristics and his performance on supervision.

//

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR CONTINUE SENTENCING  - 7**

## CONCLUSION

The Government did not implicitly breach the plea agreement by providing the Court with evidence of Defendant's conduct acting as a lookout, assisting with the transportation of drugs by functioning as the lead car, and communicating with his coconspirator Roberts. However, the Government does not object, and affirmatively requests, the Court strike Exhibits #1 and #2, any reference to those Exhibits in its Sentencing Memorandum. Further, the Government does not object to Defendant's request for a continuance of sentencing. Such a continuance may aid this Court's determination of whether Defendant's Nevada drug conviction qualifies as a controlled substance offense if the Nevada Supreme Court issues a decision on the certified question in *United States v. Figueroa-Beltran*, 892 F.3d 997 (9th Cir. 2018).

Respectfully submitted this 18th day of June, 2020.

                                              BART M. DAVIS
                                              UNITED STATES ATTORNEY
                                              By:

                                              /s/ *Christopher S. Atwood*
                                              ―――――――――――――――――――

                                              CHRISTOPHER S. ATWOOD
                                              Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2020, the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Craig H. Durham<br>FERGUSON DURHAM, PLLC<br>223 N. 6t h Street, Suite 325<br>Boise, Idaho 83702<br>Telephone: (208)-345-5183<br>chd@fergusondurham.com | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |

*/s/ Christopher S. Atwood*

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR CONTINUE SENTENCING  - 9**