BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
CHRISTOPHER S. ATWOOD, IDAHO STATE BAR NO. 7013
ASSISTANT UNITED STATES ATTORNEY
ALEXIS R. KLEMPEL, IDAHO STATE BAR NO. 9449
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>STEVEN TODD THOMPSON,<br><br>Defendant. | Case No. 1:18-cr-401-EJL-002<br><br>**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM** |

The United States of America, by and through Bart M. Davis, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, submits the following amended memorandum setting forth the Government's position at sentencing.  The Government recommends that the Court sentence the Defendant to a term of imprisonment within the advisory guideline range followed by three years of supervised release.

## BACKGROUND

Defendant pleaded guilty, pursuant to a plea agreement, to conspiracy to distribute controlled substances as charged in count one of the Third Superseding Indictment. (ECF No. 275). The Third Superseding Indictment alleges the conspiracy occurred from approximately

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 1**

February 2017, until December 10, 2018. (ECF No. 194). Defendant admits that he entered into

an agreement with codefendant David Roberts to distribute methamphetamine. *Id* at p.3. The

parties agreed that the base offense level for the drug quantity, pursuant to U.S.S.G. § 2D1.1,

was 26 based upon 21 grams of actual methamphetamine found in Defendant's residence on

December 10, 2018. *Id*. at p. 7.

      Defendant has provided written notice of his intent to seek a downward variance. The

Government opposes a downward variance and requests the Court sentence Defendant to a

sentence within the advisory guideline range. The Government provides the following additional

information for the Court's consideration for the sole purpose of responding to Defendant's

request for a downward variance.

<u>**RESPONSE TO DEFENDANT'S REQUEST FOR DOWNWARD VARIANCE**</u>

    A.  <u>The Search of Defendant's Residence</u>.

      On September 28, 2017, probation officers and police officers searched Defendant's

residence. Government's Exhibit #3. At the time, Defendant was on felony probation for

possession of methamphetamine for the purpose of sale. ECF # 332-2; PSR ¶ 80.  He tested

positive for methamphetamine and opiates. Government's Exhibit #3. During a search of

Defendant's residence, police found two digital scales, a tin measuring cup, and $4,500.

Government's Exhibit # 3. Defendant was arrested and was later convicted of possessing

marijuana and the additional charges were dismissed. PSR ¶ 81. Defendant served 90 days in jail

for this conviction. PSR ¶ 81. While in jail, he made several recorded calls to Roberts. During

one call to Roberts on April 29, 2018, Defendant talked about how he wished he could serve his

jail on the weekends because it would get him out "there to paper." Government's Exhibit # 4,

18_4-29-18_1348 at 10:20–11:50.

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 2**

B.  Surveillance of Defendant.

Defendant was released from jail in July 2018. Thereafter, investigators obtained a search warrant that authorized them to receive location data for Roberts's cell phone. On September 29, 2018, investigators conducted surveillance of Roberts as he returned from Nevada to Idaho. Government's Exhibit # 5. Investigators saw Roberts driving a rental car with a 2003 Mitsubishi Galant, bearing Idaho license plate 2TZ7457 traveling in tandem with him. The vehicles were seen traveling north on Highway 93 into Jackpot before they stopped at a casino. Later, both vehicles continued to travel north, in tandem, towards Twin Falls, Idaho. Both vehicles turned off Highway 93 onto a gravel road and traveled together to Twin Falls using back country roads. Government's Exhibit #5. The Galant was later found parked at Defendant's residence at 280 Harrison Street in Twin Falls.[1]

Later, investigators obtained a search warrant that authorized them to receive historical location data for Defendant's cell phone. This location data from this date shows Defendant's phone traveled south to Ely, Nevada where it met with Robert's cell phone at approximately 3:30am as Roberts traveled back from California. Government's Exhibit #6. The two traveled, in tandem, back to Twin Falls as described above.

C.  Defendant's Intercepted Communications.

On November 16, 2018, investigators received court authorization to intercept wire and electronic communications occurring over Roberts's cell phone. Investigators intercepted many communications between Roberts and Defendant Thompson who was using telephone number

---

[1] At the time, investigators thought the driver of the Galant was Kyle Pherigo because the Galant was registered to Cynthia Pherigo who is Defendant's sister. Investigators now know it was Defendant driving the Galant. Kyle Pherigo denied that he was driving the Galant. Roberts later conceded Thompson was driving the Galant. The location information of Defendant's phone show that he was the driver of the Galant.

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 3**

208-297-9870. Defendant frequently communicated to Roberts that he had "paper" for him but they did not overtly discuss drug transactions or any amounts. Defendant also frequently warned Roberts about the presence of law enforcement surveillance. *See* Government's Exhibit #7, session #01240, (phone call where Defendant alerts Roberts to undercover police and also says he has "some paper" for Roberts). On December 6, 2018, when Defendant told Roberts he had paper for him, Robert replied that he needed it. Government's Exhibit #8, session #02608. The next day Roberts went to California to obtain 12 pounds of methamphetamine. As Robert traveled back towards Idaho with the methamphetamine, Defendant warned Roberts about law enforcement presence and asked Roberts, "are you alright?" Government's Exhibit #9, session 03191. In that same call, Defendant asked, "do you need help?" and asked "are you going to make it or what?" *Id*. Defendant then discussed driving down to Jackpot, Nevada to get a room. *Id*. On December 10, 2018, as Roberts drove north into Jackpot traveling towards Idaho with 12 pounds of methamphetamine, Defendant, who was on the phone with Roberts, pulled out in front of Roberts to lead him back into Twin Falls. Government's Exhibits # 10 (session #03239) and #11 (session #03244). Defendant asked Roberts if he wanted to take the country road back into Twin Falls. Government's Exhibit # 11. Defendant and Roberts were both stopped and arrested. PSR ¶ 40.

      D.  <u>Methamphetamine found in Defendant's residence</u>.

      Later that same day, investigators searched Defendant's residence at 280 Harrison Street in Twin Falls, pursuant to a federal search warrant. PSR ¶ 41. Investigators found approximately 23 grams of methamphetamine and a digital scale. PSR ¶ 41.

      E.  <u>Roberts denied Defendant's involvement</u>.

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 4**

When questioned by investigators Roberts admitted that he used rental cars to travel to California and obtain methamphetamine because he thought law enforcement was investigating him. Government's Exhibit # 12. He admitted that he would travel down a gravel road south of Twin Falls to avoid law enforcement detection. *Id*. He first denied that Defendant was with him during the trip on September 29, 2018. *Id*. He eventually admitted Defendant traveled with him down the gravel road but claimed Defendant was not involved at all and just happened to be there. *Id*. At the time, Roberts did not know investigators had location information for Defendant's phone showing he traveled to meet Roberts near Ely, Nevada at 3:30am only to turn around and immediately return to Idaho. Roberts told investigators that Defendant never assisted him as a buffer car, did not sell drugs for Roberts, and was not involved in a conspiracy with Roberts. *Id*.

Defendant has pleaded guilty to conspiring with Roberts to distribute methamphetamine. The evidence shows Defendant conspired with Roberts. The Court should not consider any additional drug quantities other than those seized at Defendant's residence. *See United States v. Culps,* 300 F.3d 1069, 1076 (9th Cir. 2002) (if the district court approximates drug quantity beyond what was seized, the approximation must be supported by sufficient indicia of reliability and the court must err on the side of caution in its approximated drug quantity). Further, the Government has agreed to a two-level reduction in the advisory guideline range because the Defendant was a minor participant relative to others involved including Roberts.

Defendant's request for a downward variance is not warranted. Defendant was a minor participant. However, his involvement spanned a lengthy period. His conduct involved acting as a lookout and alerting Roberts to avoid law enforcement detection, assisting with transporting

drugs by acting as a lead car, and assisting Roberts with selling small amounts of methamphetamine.

Defendant is a career offender with a lengthy criminal history. Whether or not the Court finds Defendant is a career offender under U.S.S.G. § 4B1.1(b)(3), his prior convictions demonstrate that he is—in reality—someone who has twice been convicted of serious crimes involving drug dealing. This Court's ruling whether his prior convictions qualify as a "controlled substance offense" may involve a close comparison of the textual differences in the law but the simple facts show that he continues to distribute drugs into the community. For these reasons, the Court should deny Defendant's request for a variance. The Court should sentence Defendant within the advisory guideline range.

## **OBJECTIONS TO PSR**

The Government has objected to the PSR because Defendant is a career offender and because he obstructed the administration of justice. ECF #332. Defendant argues that the Government's objections are untimely because they were filed after the deadline set by the Court. *See* ECF 333. However, those deadlines were reset by Defendant's own motion. *See* ECF 296. Defendant moved the Court to continue the sentencing hearing and specifically requested, "that the deadlines for filing of all pre-sentencing memoranda and materials be reset." *Id*. The Court granted Defendant's motion. ECF #302. The Government even conferred with United States Probation to confirm the new deadline for objections. Government's Exhibit # 13. The Government's objections are timely and Defendant had ample time to respond.

The Government intends to present evidence at the sentencing hearing. This Court should sustain the Government's objections.

//

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 6**

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework that district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1)     Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2)     Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties.  Courts may not presume that the guidelines range is reasonable.  Nor should the guidelines factors be given more or less weight than any other.  The guidelines are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3)     If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

(4)     Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

### A.     Statutory Maximum and Minimum Sentence

The maximum term of imprisonment for a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 864, for conspiring to distribute methamphetamine is twenty years. There is a minimum period of supervised release of three years, a maximum fine of $1,000,000 and a special assessment of $100.

### B.     United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).

//

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 7**

            1.      <u>Offense Level Calculation</u>

The PSR calculated the Defendant's total offense level as 23. PSR ¶ 59. That calculation includes an increase for obstruction, which the Government agrees with and Defendant opposes. The Government also seeks objected to the offense level calculation because the Defendant is a career offender. If the Court sustains the objection, the offense level is 29 if the Court grants Defendant acceptance of responsibility.

            2.      <u>Criminal History Calculation</u>

The PSR calculated the Defendant's criminal history score as 11 and criminal history category of V. PSR ¶ 84. Neither party objected to the criminal history calculation. However, if the Court finds Defendant is a career offender than his criminal history category is VI, pursuant to U.S.S.G. § 4B1.1(b)(3).

            3.      <u>Advisory Guideline Range</u>

If the Court finds Defendant is a career offender than his advisory guideline range is 151 to 188 months. If the Court finds he is not a career offender but he obstructed justice than his advisory guideline range is 84 to 105 months if he is entitled to acceptance of responsibility. If the Court overrules both the Government's objections, the advisory guideline range is 70 to 87 months.

**<u>IMPOSITION OF SENTENCE</u>**

**A.**      **<u>Imposition of a Sentence under 18 U.S.C. § 3553</u>**

            1.      <u>18 U.S.C. § 3553(a) factors</u>

                  a.      <u>The nature and circumstances of the offense</u>

Defendant conspired with Roberts to distribute methamphetamine. Defendant's conduct was not a one-time lapse of judgment but instead occurred over a lengthy period. His

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 8**

involvement included alerting Roberts to the presence of law enforcement so he could avoid detection.

Defendant's minor role was already taken into account in the advisory guideline range. Further, many other codefendants and coconspirators received the minor role reduction or a greater reduction. Co-defendants Echo Dalos and Amanda Smith received the same two-level minor role reduction, while Crystal Cox received a four-level minimal role reduction.

Even after Defendant was caught and arrested, his criminal thinking continued. Whether or not the conduct amounts to obstruction of justice, Defendant solicited several individuals to write untrue letters stating that various cooperating witnesses were lying about Defendant's involvement in the conspiracy. After Defendant entered his guilty plea, the Government learned from two of the individuals that Defendant asked them to lie about the cooperating witnesses. Defendant also sent other letters himself in an attempt to influence witnesses against him. *See* ECF #332.

b.    <u>The history and characteristics of the defendant</u>

The Defendant has a lengthy criminal history as reflected in the PSR. Defendant has approximately 23 prior convictions. Six of those are felony convictions. He violated probation and parole in every case. PSR ¶¶ 72, 73, 76, 77, 78. Indeed, he was still on felony probation when he committed this crime. PSR ¶¶ 80, 83. He was incarcerated with the Idaho Department of Correction from 1998 to 2005, and again from 2008 (almost continuously) through 2015.

Most concerning, Defendant has two prior convictions of the same nature as the instant offense. He was convicted of delivery of a controlled substance, in violation of Idaho Code § 37-2732(a). PSR ¶ 76. After serving over seven years in prison and while on parole for that serious offense, Defendant committed a similar felony offense in 2014. PSR ¶ 80 After he was convicted for possessing methamphetamine for the purpose of sale in Nevada, he was placed on felony

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 9**

supervision again. PSR ¶ 80. He was still on probation for his second drug conviction when he engaged in the drug conspiracy in this case. Defendant has proven, through his conduct, that he will not follow conditions of release, he will disregard the law and distribute drugs into the community.

                    c.       <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

The Defendant's conduct was very serious. A within guideline sentence would reflect the seriousness of his actions and provide for just punishment.

                    d.       <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

A within guidelines sentence would deter both the Defendant and others and would protect the public from the risk that he presents by removing him from society for a considerable period.

                    e.       <u>The need to avoid unwarranted sentence disparities</u>

A within guidelines sentence would avoid unwarranted sentence disparities. Defendant is not similarly situated to most of the codefendants and coconspirators.

                  2.       <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The Government's within-guidelines recommendation is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Nonetheless, "the Guidelines Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 10**

professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "the Guidelines Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the § 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

The guidelines deserve significant respect. The Government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. A district court, however, must consider the guidelines range, *see* § 3553(a)(4), and is usually well-advised to follow the Sentencing Commission's advice in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, there are no other § 3553(a) factors in this case which mitigate against imposition of a sentence within that range; to the contrary, the § 3553(a) factors on balance support the imposition of the recommended guidelines sentence. Accordingly, the Government recommends a within-guideline sentence.

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a sentence within the guideline range. The Government submits that such a sentence is sufficient, but not greater than necessary, to

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 11**

accomplish the goals of sentencing, and that a lesser sentence is not supported by application of

the 18 U.S.C. § 3553(a) factors.

The Government moves the Court for authorization to file this memorandum under seal

because it details cooperation by several cooperating codefendants and coconspirators and also

because it contains personal medical information of the Defendant.

Respectfully submitted this 18th day of June, 2020.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

/s/ Christopher S. Atwood
_____
CHRISTOPHER S. ATWOOD
Assistant United States Attorney


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2020, the foregoing **GOVERNMENT'S

SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court using

the CM/ECF system, and that a copy was served on the following parties or counsel by:

| Craig H. Durham<br>FERGUSON DURHAM, PLLC<br>223 N. 6t h Street, Suite 325<br>Boise, Idaho 83702<br>Telephone: (208)-345-5183<br>chd@fergusondurham.com | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |
|---|---|

/s/ Christopher S. Atwood

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM - 12**